UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Mei Tsang, Esq. (SBN 237959)
mtsang@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA  92614
Telephone: (949) 679-0052
Facsimile: (949) 679-0461

DONALD L. JACKSON, (*pro hac vice* to be submitted)
djackson@davidsonberquist.com
ALAN A. WRIGHT, (*pro hac vice* to be submitted)
awright@davidsonberquist.com
DAVIDSON BERQUIST JACKSON &
 GOWDEY LLP
8300 Greensboro Drive, Suite 500
McLean, VA 22102
Telephone: (571) 765-7700
Facsimile: (571) 765-7200

Attorneys for Plaintiff
OPUS ONE CORPORATION D/B/A CONTEST FACTORY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPUS ONE CORPORATION D/B/A CONTEST FACTORY,<br><br>             Plaintiff,<br><br>      v.<br><br>TELESCOPE INC.,<br><br>             Defendant. | Case No.<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Opus One Corporation d/b/a Contest Factory ("Plaintiff" or "Opus One"), by its attorneys, hereby files this complaint against Telescope Inc. ("Defendant" or "Telescope") for patent infringement, alleging as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, 35 U.S. Code Title 35, involving infringement of United States Patent No. 10,891,642 ("the '642 patent") and U.S. Patent No. 8,655,715 ("the '715 patent") (collectively, "patents-in-suit" or "asserted patents").

## THE PARTIES

2.      Plaintiff Opus One is a California corporation with its principal place of business at 18231 Irvine Blvd., Suite 100, Tustin, CA 92780.

3.      Opus One, doing business as Contest Factory, is in the business of generating and operating online contests that are covered by the asserted patents. Opus One began offering its online contests in the United States in or about 2001. Opus One directly competes with the Accused Products and Services (described below) offered by Defendant Telescope.  Upon information and belief, Opus One has lost substantial business to the Accused Products and Services offered by Defendant Telescope.

4.      On information and belief, Defendant Telescope Inc. is a Delaware corporation having a place of business at 10250 Constellation Blvd., Suite 02-170, Los Angeles, CA 90067.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this District under 28 U.S.C. §1400(b) as Defendant Telescope (1) has a regular and established place of business, and has committed acts of infringement in this District, and (2) has its principal place of business located in this District.

6.      Defendant Telescope maintains continuous and systematic contacts

within this District by maintaining its principal place of business in this District, by selling and offering for sale products and services to customers within this District, and by offering for sale products and services that are used within this District.

7. This Court has specific personal jurisdiction over Defendant Telescope because Defendant, directly and/or through intermediaries, has conducted and conducts substantial business within this District including, but not limited to: (i) engaging in at least part of the infringing acts alleged herein; (ii) purposefully and voluntarily placing one or more infringing products or services into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this District; and/or (iii) regularly soliciting and/or doing business in this District, and/or engaging in other persistent courses of conduct in this District, and/or or deriving substantial revenue from goods and services provided to individuals in this District.  Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) for the reasons set forth above.

**THE TECHNOLOGY AND THE PATENTS IN SUIT**

8. The patents-in-suit generally disclose and claim systems and methods to obtain, host, and provide content for review, distribution, and ranking, as well as access to, automated creation of, and performance of contests among sets of content-based contestants. The systems and methods provide customizable interactive, ongoing, multi-level, multi-round contests with expert review of and filtered submission of content-based contestants. Among other advantages entities desiring to hold a contest (a/k/a third-party providers or contest sponsors) may use the systems and methods to obtain expert and consumer review and ranking of their particular content.

9. The '642 patent, entitled, "System and Method for Interactive Contests," was duly and legally issued by the United States Patent and Trademark Office on January 12, 2021.  A copy of the '642 patent is attached hereto as Exhibit A.

10.     The '715 patent, entitled "System and Method for Interactive Contests," was duly and legally issued by the United States Patent and Trademark Office on February 18, 2014. A copy of the '715 patent is attached hereto as Exhibit B.

11.     Each of the foregoing patents-in-suit is valid and enforceable.

12.     Opus One is the exclusive owner of all right, title, and interest in each of the patents-in-suit.  Opus One has the right to bring this action to recover damages for any current or past infringement of these patents.

13.     Plaintiff Opus One has never granted Defendant Telescope a license to practice any of the inventions claimed in the patents-in-suit.

## OPUS ONE'S INTERACTIVE CONTEST PATENTS

14.     The inventions claimed in the '715 and '642 patents provide a novel system to genearate automated contests, rankings, and expert reviews in a system accessible to producers of content, industry experts, and/or consumer end-users over a network such as the Internet.  '642 Patent at 1:40-44.

15.     Online contest / voting technology prior to the inventions in the patents-in-suit, such as web-polls, did not simultaneously allow for flexible media content, such as videos, audio, or virtually any playable content, did not allow for adjustable scoring mechanisms, did not allow for registered end-users, did not allow for multiple round contests such as elimination contests, did not allow for scorekeeping among end-users, did not allow for demographic correlation and marketing data interpolation, did not allow for concurrent sweepstakes based on web poll voting, and did not allow for complete customization of the interactive operation elements to be provided by the contest generator to the third party provider / contest sponsor desiring to hold a contest.  *Id*. at 2:28-39.

16.     The claimed inventions provide multiple multi-level contests for any number of end-users and any number of content providers, allowing, among other features, a content producer to submit content for the contest, industry experts to

review content and seek out top content, and end-users to rank, vote for, and seek out the content. *Id*. at 3:25-31.

## OPUS ONE'S CLAIMS ARE PATENT ELIGIBLE

17.　The asserted claims in the patents-in-suit are directed to patent eligible subject matter.

18.　The asserted claims in the patents-in-suit do not recite an abstract idea, law of nature, or natural phenomenon.

19.　The patents-in-suit disclose and claim a computer system that facilitates generating and operating an online contest for third-party providers / contest sponsors using a specifically generated URL and one or more webpages generated using such URL, among other features.

20.　The asserted claims in the patents-in-suit recite elements that are integrated into a highly practical and concrete application for online contests, including specific improvements to the functioning of computers and computer networks used for online contests.

21.　The system and methods disclosed and claimed in the asserted patents-in-suit specify how interactions with and through the Internet are manipulated to yield a desired result.  Specifically, the claimed systems generate a URL and directs contestants or voters to the above-described URL-generated web page that presents contest information from the contest generator that has visual "look and feel" elements from the third-party / contest sponsor website.  As such, the contest generator company undertakes management and storage of contest information, contestant content and data, and voter data and relieves the third-party contest sponsor of the burden of such data management and storage while users experience the "look and feel" of the third-party contest sponsor website.  In this way, the claims provide a solution to a problem that is necessarily rooted in computer technology to overcome problems specifically arising in the realm of online contests over computer networks.

22.     The asserted claims in the patents-in-suit are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

23.     The asserted claims in the patents-in-suit do not take a well-known or established business method or process and apply it to a general-purpose computer. Instead, the specific systems and processes described in the asserted claims show a non-conventional and non-generic arrangement of technology components for the efficient generation and improved operation of online contests.

24.     The asserted patent claims are directed toward a solution rooted in computer technology and uses technology, unique to computers and networks, to overcome problems specifically arising in the realm of computerized online contests.

25.     The asserted patent claims are not directed at a mere mathematical relationship or formula.

26.     The asserted patent claims cannot be performed by a human, in the human mind, or by pen and paper.

27.     The asserted patent claims, both as a whole and with respect to individual elements, are not merely well-understood, routine, conventional activities previously known to the industry.  Sponsoring multi-level, interactive, online contests for third-party provider contest sponsors over computer networks, such as the Internet, including the uploading, cross-correlation, sorting by genre, review, and ranking of media content as claimed in the patents-in-suit were not known in 2000.

28.     In allowing the claims of the '642 Patent, the U.S. Patent & Trademark Office states that the closest prior art does not teach or suggest "generating a URL in response to receiving the request; generating one or more webpages using the generated URL, transmitting to the third-party provider the generated URL; …generating links for each of the second content data, the third content data and the retrieved first content data" as found in the independent claims.

29.     In allowing the claims of the '715 Patent, the U.S. Patent & Trademark Office states that the closest prior art does not teach or suggest the claimed sorting of "the first and second data content based on an identifying characteristic" to provide for the sorting and selection of content data based on the same genre.

30.     Accordingly, each claim of the Opus One patents-in-suit recites a combination of elements sufficient to ensure that each claim, in practice, amounts to significantly more than a claim to a patent-ineligible concept.

## THE ACCUSED PRODUCTS AND SERVICES

31.     Defendant Telescope makes, uses, sells, offers for sale, and/or imports products and services that infringe the patents-in-suit.

32.     Through its website www.telescope.tv, Telescope offers a variety of products and services that are used to, *inter alia*, upload and store content, and facilitate access, distribution, voting, and other features used in interactive, ongoing, multi-level, multi-round online contests that infringe the patents-in-suit ("Accused Products and Services").

33.     Telescope uses and offers the Accused Products and Services using computer systems comprising hardware computer processors, computer memory, one or more non-transitory computer readable storage medium storing computer executable instructions that generate online contests for third-party provider contest sponsors to generate an online contest as claimed by the patents-in-suit as set forth in detail for Representative Accused Products and Services in each Count below.

34.     Among other products and services, Defendant Telescope offers "voting products" and "sweepstakes & contests products."  See, https://telescope.tv/services/.

## REPRESENTATIVE ACCUSED PRODUCTS AND SERVICES

35.     Defendant Telescope lists dozens of voting contests on its website (https://telescope.tv/casestudies?services=standard-vote,hashtag-vote,multi-vote,custom-online-vote,category-vote,bracket-vote) including, but not limited to, online voting contests for HBO's documentary series *Project Greenlight*

(https://telescope.tv/casestudies/project-greenlight/), ABC's *American Idol* (https://telescope.tv/casestudies/american-idol/), and NBC's *The Voice* (https://telescope.tv/casestudies/the-voice-voting/ and https://telescope.tv/casestudies/the-voice-nbc-instant-save/) ("Representative Accused Products and Services").

36.     Defendant Telescope describes its *Project Greenlight* contest as a "custom multi-phased competition utilizing an integrated video uploader experience as well as two tiered public facing vote to find the next great American filmmaker." https://telescope.tv/casestudies/project-greenlight/.  Telescope "products used" in the *Project Greenlight* case study include "Uploader," "Rating," and "Custom Online Vote."  *Id.*

37.     Telescope's "uploader" allows contestants to submit User Generated Content via the Uploader.  https://telescope.tv/products/media-uploader/.  Telescope advertises that a third party contest sponsor can "have Telescope host the uploader."  *Id.*

38.     Telescope's "Custom Online Vote" allows Telescope to "create customized online votes" and manage "verification and security supporting each and every campaign."  https://telescope.tv/products/custom-online-vote/.

39.     Telescope describes the *Project Greenlight* contest as follows:

There were four stages to the campaign:

Stage 1 - Video upload and submission

Stage 2 - Peer judging of videos

Stage 3 - Top 200 entrants submitted a bio video

Stage 4 - Peer judging of the Top 20 submissions

\*\*\*

The video submission with the most votes from the final voting stage won the filmmaker a Top 10 spot on the show.

https://telescope.tv/casestudies/project-greenlight/

40.     Deferndant Telescope also describes its contest collaboration with the *American Idol* franchise: "Telescope has powered *American Idol* voting since its launch in 2002. … Telescope has partnered with the brand on many innovations.  In 2018, *American Idol* was relaunched on ABC and wanted to increase voter participation with a native application for iOS and Android users that included not only the key vote experience but serve as a centralized hub for all things Idol including **user generated content**, **show content**, play along experiences and of course **the main show vote**."  https://telescope.tv/casestudies/abc-american-idol-app/ (emphasis added).  Telescope "products used" in the *American Idol* case study include "uPic," "Custom Online Vote," and "Multi Vote."  *Id.*

41.     Telescope's "uPic" is described by Telescope as "[a]n image **uploader** solution with filters and flare to build brand awareness." (https://telescope.tv/products/upic/) and "[a]llow[s] viewers to upload their favorite photos and filter it with your trademark elements and [i]nvite fans to pick their favorite filter and share it with their friends and Telescope advertises that a third-party contest sponsor can "[p]ublish within [their] site or have Telescope host (*id*.)

42.     Telescope's "Multi Vote" "[a]llow[s] your fans to award multiple votes across nominees with an online Multi Vote." https://telescope.tv/products/multi-vote/.

43.     Upon information and belief, Telescope offered and sold to *American Idol* and its agents, its Accused Products and Services, knowing that *American Idol* would use the Accused Products and Services as Telescope instructed and intended, resulting in infringement of the patents-in-suit.

44.     Defendant Telescope further describes its contest collaboration with *The Voice* franchise:  "*The Voice* is one of the leading talent competitions with a big focus on audience participation.  Partnering with Telescope since its launch in 2011, it has become the premier social TV show.  From the very first season of NBC's *The Voice*, Telescope has innovated and powered multiple voting methods to drive

audience engagement with the brand." https://telescope.tv/casestudies/the-voice-voting/.  Telescope "products used" in the *The Voice* case study include "Custom Online Vote," "Multi Vote," Social Vote," and "Standard Vote." *Id*.

45.    Telescope describes "Standard Vote" as a "robust online vote that gives fans the power to make the choice" and describes that a third-party contest sponsor can "[c]ustomize an online vote branded for your event."

46.    Using "Social Vote," a third-party provider contest sponsor can "[r] un a vote on [their] desired social platforms."  https://telescope.tv/products/hashtag-vote/.

47.    Upon information and belief, Telescope offered and sold to *The Voice* and its agents, its Accused Products and Services, knowing that *The Voice* would use the Accused Products and Services as Telescope instructed and intended, resulting in the infringement of the patents-in-suit.

48.    Opus One alleges, on information and belief, that Defendant makes, uses, sells, or offers for sale products and services that infringe at least one claim of each of the asserted patents, as set forth in more detail below.

49.    Defendant has actual prior knowledge of the asserted patents and Opus One's belief that Defendant infringes the asserted patents, by virtue of its prior communications with Opus One.

## COUNT I – INFRINGEMENT OF THE '642 PATENT

50.    Plaintiff incorporates paragraphs 1 through 49 herein by reference.

51.    Defendant, either alone or jointly in conjunction with its customers, has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '642 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale in the United States, the Accused Products and Services that infringe one or more of the claims '642 patent.

52.    Specifically, claim 1 of the '642 patent claims:

A computer system for generating and operating an online contest

for a third-party provider, the computer system comprising:

one or more hardware computer processors;

one or more hardware computer memory; and

one or more non-transitory computer readable storage medium storing computer executable instructions that when executed by the one or more hardware computer processors cause the one or more hardware computer processors to perform the steps of:

receiving a request from a third-party provider to generate an online contest;

generating a URL in response to receiving the request;

generating one or more webpages using the generated URL;

transmitting to the third-party provider the generated URL;

receiving, from a first content producer via the one or more generated webpages, a content URL associated with a first content data;

receiving, from a second content producer and third content producer, a second content data and a third content data;

storing the second content data and the third content data in the memory;

retrieving the first content data from a database over a computer network using the content URL;

generating links for each of the second content data, the third content data, and the retrieved first content data;

generating the online contest, wherein the online contest comprises the generated links;

transmitting the generated online contest to a plurality of user computers;

receiving, from the plurality of user computers, responses via the generated links; and

determining a result of the online contest using the received responses.

53.    For the *Project Greenlight* contest, on information and belief, Telescope had a computer system for generating and operating the online contest for the contest



sponsor/third-party provider. https://telescope.tv/casestudies/project-greenlight/.





{234238.1}

54.     The computer system for the *Project Greenlight* contest was comprised of one or more hardware computer processors, one or more hardware computer memory; and one or more non-transitory computer readable storage medium storing computer executable instructions.  The executable instructions included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; to generate a URL in response to receiving the request; to generate one or more webpages using the generated URL; to transmit to the contest sponsor/ third-party provider the generated URL.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the first content data from a first content producer via one or more generated webpages comprising Telescope's uploader.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the second content data from a second content producer and a contestant video URL associated with a third content data from a third content producer.   https://telescope.tv/products/media-uploader/].







55.      The executable instructions for the *Project Greenlight* contest further included instructions that when executed by the hardware computer processors caused the processors to store the second content data and the third content data in the memory.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to retrieve the first content data from a database over a computer network using the content URL and to generate links for each of the second content data, the third content data, and the retrieved first content data.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to generate the online contest, wherein the online contest comprises the generated links and to transmit the generated online contest to a plurality of user computers.  https://telescope.tv/products/rating/].







56.    The executable instructions for the *Project Greenlight* contest further included instructions that when executed by the hardware computer processors caused the processors to receive from the plurality of user computers, responses via the generated links; and determine the result of the online contest using the received responses.  https://telescope.tv/products/custom-online-vote/].



{234238.1}

COMPLAINT FOR PATENT INFRINGEMENT

57.     Similarly, for the *American Idol* contest, on information and belief, Telescope had a computer system for generating and operating the online contest for the contest sponsor/third-party provider.

58.     The Telescope computer system for the *American Idol* contest was comprised of one or more hardware computer processors, one or more hardware computer memory; and one or more non-transitory computer readable storage medium storing computer executable instructions.  The executable instructions included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; to generate a URL in response to receiving the request; to generate one or more webpages using the generated URL; to transmit to the contest sponsor/ third-party provider the generated URL.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the first content data from a first content producer via one or more generated webpages comprising Telescope's uploader.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the second content data from a second content producer and a contestant video URL associated with a third content data from a third content producer.

59.     The executable instructions for the *American Idol* contest further included instructions that when executed by the hardware computer processors caused the processors to store the second content data and the third content data in the memory.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to retrieve the first content data from a database over a computer network using the content URL and to generate links for each of the second content data, the third content data, and the retrieved first content data.  The executable instructions further included

instructions that when executed by the hardware computer processors caused the processors to generate the online contest, wherein the online contest comprises the generated links and to transmit the generated online contest to a plurality of user computers.

60.     The executable instructions for the *American Idol* contest further included instructions that when executed by the hardware computer processors caused the processors to receive from the plurality of user computers, responses via the generated links; and determine the result of the online contest using the received responses.

61.     Similarly, for contests for *The Voice*, on information and belief, Telescope had a computer system for generating and operating the online contest for the contest sponsor/third-party provider.

62.     The Telescope computer system for contests for *The Voice* was comprised of one or more hardware computer processors, one or more hardware computer memory; and one or more non-transitory computer readable storage medium storing computer executable instructions.  The executable instructions included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; to generate a URL in response to receiving the request; to generate one or more webpages using the generated URL; to transmit to the contest sponsor/ third-party provider the generated URL.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the first content data from a first content producer via one or more generated webpages comprising Telescope's uploader.  The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to receive a contestant video URL associated with the second content data from a second content producer and a contestant video URL

associated with a third content data from a third content producer.

63.     The executable instructions for contests for *The Voice* further included instructions that when executed by the hardware computer processors caused the processors to store the second content data and the third content data in the memory. The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to retrieve the first content data from a database over a computer network using the content URL and to generate links for each of the second content data, the third content data, and the retrieved first content data. The executable instructions further included instructions that when executed by the hardware computer processors caused the processors to generate the online contest, wherein the online contest comprises the generated links and to transmit the generated online contest to a plurality of user computers.

64.     The executable instructions for contests for *The Voice* further included instructions that when executed by the hardware computer processors caused the processors to receive from the plurality of user computers, responses via the generated links; and determine the result of the online contest using the received responses.

65.     As such, as demonstrated by the Representative Accused Products and Services, Telescope, either alone or jointly in conjunction with its customers, infringes at least claim 1 of the '642 patent. To the extent any of the limitations set forth above for the asserted claims are not met literally by Telescope's Accused Products and Services, those limitations are met under the Doctrine of Equivalents because such differences would be insubstantial from the claimed limitations, and any such differences would function in a substantially similar way to reach substantially the same result as the claimed invention. By way of example, any of the claimed data content may be stored, accessed, or processed in an insubstantially different manner than claimed, but the resultant online contest would still function in substantially the same manner as claimed, and would result in a substantially same

online contest as claimed.

66.     Defendant has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).  Defendant has actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '642 patent by, as demonstrated by the Representative Accused Products and Services examples, selling or otherwise supplying the Accused Products and Services in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Product and Services, for their intended purpose to infringe the '642 patent, with instructions as to the use of those products and services and guidance as to cause users to perform the specific steps to utilize those products and services, including the provision of interactive data fields, all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Products and Services and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to those products and services.

67.     Defendant has contributed to, and continues to contribute to, the infringement by third parties, including its customers, of one or more claims of the '642 patent under 35 U.S.C. § 271(c) by, as demonstrated by the Representative Accused Products and Services examples, selling and/or offering for sale in the United States the Accused Products and Services knowing that those products and services constitute a material part of the invention or inventions of the '642 patent, knowing that those products and services are especially made or adapted to infringe the '642 patent, and knowing that those products and services are not staple articles of commerce suitable for substantial non-infringing use.

68.     Opus One has been and continues to be damaged by Defendant's infringement of the '642 patent.  Opus One has no adequate remedy at law.

69.     Having knowledge of the '642 patent, Defendant knows, or should know, that without taking a license to the patents-in-suit, its actions continued to

infringe one or more claims of the '642 patent.

70.    Defendant has willfully infringed the '642 patent and continues to do so.

71.    The conduct by Defendant in infringing the '642 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '715 PATENT

72.    Plaintiff incorporates paragraphs 1 through 71 herein by reference.

73.    Defendant, either alone or joint in conjunction with its customers, has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '715 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale in the United States, the Accused Products and Services that infringe one or more of the claims '715 patent.

74.    Specifically, claim 1 of the '715 patent claims:

a contest system, comprising:

a contest server, comprising a processor, and a computer-readable storage medium storing computer-executable instructions that when executed by the processor cause the contest server to:

receive first content data and second content data,

store the first and second content data in the computer-readable storage medium,

access the first and second content data from the computer-readable storage medium,

sort the first and second content data based on an identifying characteristic of the first content data and second content data to provide sorted content data based on genre,

select the first content data and the second content data from the sorted content data, wherein the first content data and the second content data have a same genre,

generate contest data based on the first and second content data,

transmit over a network the contest data to serve at least one contest to a user, the contest comprising at least one voting stage,

include display data in the transmitted content data to electronically present during the at least one voting stage representations of the first

and second content data on a display having access to the network,

receive during the at least one voting stage vote data transmitted over the network, the vote data representing one or more received votes from voters for one or more of the first or second content data concurrently displayed, the vote data comprising at least one vote; and

select at least one of the first or second content data based on the vote data.

75.     For the *Project Greenlight* contest, on information and belief, Telescope had a contest system for generating and operating the online contest that includes a contest server having a processor and computer-readable storage medium for storing computer-executable instructions that, when executed by the processor, cause the contest server to perform certain functions.  More specifically, the contest server will receive, store, access and sort the first and second content data based on an identifying characteristic to sort the content based on genre.  In the example provided by Telescope, *Project Greenlight* provided user with a "Genre" tag to provide an identifying characteristic for uploaded and stored content.

1



2

3

4

5

6

7

8

9

10

11

12

13

14

15



16

17

18

19

20

21

22

23

24

25

26

27

28



https://telescope.tv/casestudies/project-greenlight/.

76.    More specifically, the executable instructions for the *Project Greenlight* contest included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; and caused the processors to receive a contestant video URL associated with the first content data from a first content producer and second content data from a second content producer via one or more generated webpages comprising Telescope's uploader.





COMPLAINT FOR PATENT INFRINGEMENT



[https://telescope.tv/products/media-uploader/](https://telescope.tv/products/media-uploader/).

77.    For the *Project Greenlight* contest, once the first content data and second content data are stored based on genre, the executable instructions included instructions that when executed by the hardware computer processors cause the generation of a contest and the transmission of the first and second content data to at least one user to view and rate the content as part of the contest.





1

2

3

4

5        https://telescope.tv/products/rating/.

6        78.      The executable instructions for the *Project Greenlight* contest also

7   included instructions that when executed by the hardware computer processors

8   caused the system to permit voting by users, and the collection and tabulation of

9   votes to select a winner of the contest.

10

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

28





https://telescope.tv/products/custom-online-vote/.

79.     Similarly, for the *American Idol* contest, on information and belief, Telescope had a contest system for generating and operating the online contest that includes a contest server having a processor and computer-readable storage medium for storing computer-executable instructions that, when executed by the processor, cause the contest server to perform certain functions.  More specifically, the contest server will receive, store, access and sort the first and second content data based on an identifying characteristic to sort the content based on genre.

80.     More specifically, the executable instructions for the *American Idol* contest included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; and caused the processors to receive a contestant video URL associated with the first content data from a first content producer and second content data from a second content producer via one or more generated webpages comprising Telescope's uploader.

81.     On information and belief, for the *American Idol* contest once the first content data and second content data are stored based on genre, the executable instructions included instructions that when executed by the hardware computer processors cause the generation of a contest and the transmission of the first and second content data to at least one user to view and rate the content as part of the contest.

82.     The executable instructions for the *American Idol* contest also included instructions that when executed by the hardware computer processors caused the system to permit voting by users, and the collection and tabulation of votes to select a winner of the contest.

83.     Similarly, for contests for *The Voice*, on information and belief, Telescope had a contest system for generating and operating the online contest that includes a contest server having a processor and computer-readable storage medium for storing computer-executable instructions that, when executed by the processor,

cause the contest server to perform certain functions.  More specifically, the contest server will receive, store, access and sort the first and second content data based on an identifying characteristic to sort the content based on genre.

84.    More specifically, the executable instructions for contests for *The Voice* included instructions that when executed by the hardware computer processors caused the processors to receive a request from the contest sponsor/ third-party provider to generate an online contest; and caused the processors to receive a contestant video URL associated with the first content data from a first content producer and second content data from a second content producer via one or more generated webpages comprising Telescope's uploader.

85.    On information and belief, for contests for *The Voice* once the first content data and second content data are stored based on genre, the executable instructions included instructions that when executed by the hardware computer processors cause the generation of a contest and the transmission of the first and second content data to at least one user to view and rate the content as part of the contest.

86.    The executable instructions for contests for *The Voice* also included instructions that when executed by the hardware computer processors caused the system to permit voting by users, and the collection and tabulation of votes to select a winner of the contest.

87.    As such, as demonstrated by the Representative Accused Products and Services, Telescope, either alone or jointly in conjunction with its customers, infringes at least claim 1 of the '715 patent.  To the extent any of the limitations set forth above for the asserted claims are not met literally by Telescope's Accused Products and Services, those limitations are met under the Doctrine of Equivalents because such differences would be insubstantial from the claimed limitations, and any such differences would function in a substantially similar way to reach substantially the same result as the claimed invention.  By way of example, any of

the claimed data content may be stored, accessed, or processed in an insubstantially different manner than claimed, but the resultant online contest would still function in substantially the same manner as claimed, and would result in a substantially same online contest as claimed.

88. Defendant has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b). Defendant has actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '715 patent by, as demonstrated by the Representative Accused Products and Services examples, selling or otherwise supplying the Accused Products and Services in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Product and Services, for their intended purpose to infringe the '715 patent, with instructions as to the use of those products and services and guidance as to cause users to perform the specific steps to utilize those products and services, including the provision of interactive data fields, all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused Products and Services and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to those products and services.

89. Defendant has contributed to, and continues to contribute to, the infringement by third parties, including its customers, of one or more claims of the '715 patent under 35 U.S.C. § 271(c) by, as demonstrated by the Representative Accused Products and Services examples, selling and/or offering for sale in the United States the Accused Products and Services knowing that those products and services constitute a material part of the invention or inventions of the '715 patent, knowing that those products and services are especially made or adapted to infringe the '715 patent, and knowing that those products and services are not staple articles of commerce suitable for substantial non-infringing use.

90. Opus One has been and continues to be damaged by Defendant's

infringement of the '715 patent.  Opus One has no adequate remedy at law.

91.    Having knowledge of the '715 patent, Defendant knows, or should know, that without taking a license to the patents-in-suit, its actions continued to infringe one or more claims of the '715 patent.

92.    Defendant has willfully infringed the '715 patent and continues to do so.

93.    The conduct by Defendant in infringing the '715 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## PRAYER OF RELIEF

**WHEREFORE**, Opus One prays for judgment as follows:

A.    That Defendant has directly and indirectly infringed each of the patents-in-suit;

B.    That Opus One be awarded all damages adequate to compensate it for Defendant's infringement of the patents-in-suit, such damages to be determined by a jury with pre-judgment and post-judgment interest;

C.    A judgment that the infringement was willful and that such damages be trebled pursuant to 35 U.S.C. § 284;

D.    An order permanently enjoining Defendant and its officers, agents, servants and employees, privies, and all persons in concert or participation with it, from further infringement of the patents-in-suit;

E.    That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Opus One be awarded attorney fees, costs, and expenses incurred relating to this action; and

F.    That Opus One be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Opus One hereby demands a trial by jury on all issues so triable.

Dated:  April 12, 2022

OPUS ONE CORPORATION D/B/A CONTEST FACTORY

by its Attorneys

UMBERG ZIPSER LLP

_____

Mark Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
Mei Tsang (SBN 237959)
mtsang@umbergzipser.com
UMBERG ZIPSER LLP
1920 Main Street, Suite 750
Irvine, CA  92614
Telephone: (949) 679-0052
Facsimile: (949) 679-0461


Donald L. Jackson
Alan A. Wright
DAVIDSON BERQUIST JACKSON & GOWDEY, LLP
8300 Greensboro Drive, Suite 500
McLean, Virginia 22102
Telephone: (571) 765-7700
Facsimile:  (571) 765-7200